UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

BANK OF NEW YORK MELLON CORP.
FOREX TRANSACTIONS LITIGATION

12 MD 2335 (LAK)

This Document Relates to:  All Cases
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09|22|2014
```

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

> Customer Class Plaintiffs seek an order (1) determining that an email dated December 5, 2007 from Richard Rua to A.J. Quitadamo (the "Rua Email") in which Rua relates at least part of the substance of legal advice he had received from Bank of New York Mellon ("BNYM") counsel concerning a matter of mutual concern to him and Quitadamo was not privileged and therefore should have been produced in unredacted form, (2) holding in any event that any privilege that otherwise might have attached was waived by the production by BNYM of the Rua Email earlier in the case in an unredacted or less redacted form, (3) requiring BNYM to state that it has not relied, and will not rely, on Rua's testimony or other evidence to assert that its counsel advised it that standing instruction FX trades were not comparable to other FX trades or, failing such a statement, to produce any documents it now is withholding as privileged that relate to the comparability issue, and (4) precluding BNYM counsel from directing witnesses not to disclose how many documents they viewed in preparation for their depositions, whether they were videotaped during preparation, or whether they viewed any such videotapes prior to testifying.[1]

---

[1] DI 452.

1.      The attorney-client privilege, assuming its requirements otherwise are satisfied, protects not only communications between corporate employees and lawyers for the corporation, but also communications of legal advice thus obtained among corporate employees responsible in a meaningful way for obtaining or acting upon such advice or participating in the dialogue between knowledgeable corporate agents and corporate counsel that is essential to the lawyers giving fully informed advice.[2]  The redacted portion of the Rua Email was privileged.

2.      The unredacted or less redacted copy of the Rua Email that was produced earlier and "clawed back" by BNYM was produced as part of a large volume of documents.  BNYM claims that there was no waiver because the failure to redact it as extensively as it now claims to have been appropriate was inadvertent.

> "[I]nadvertent production of a privileged document does not waive the privilege unless the producing party's conduct was 'so careless as to suggest that it was not concerned with the protection of the asserted privilege.'  In determining whether the production was inadvertent, courts consider (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of the discovery and extent of the disclosure, and (4) overarching issues of fairness."[3]

---

[2]

See, e.g., *Verschoth v. Time Warner, Inc.*, No. 00-CIV-1339, 2001 WL 546630, at *2 (S.D.N.Y. May 22, 2001); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).

[3]

*SEC v. Cassano*, 189 F.R.D. 83, 85 (S.D.N.Y. 1999) (footnote omitted) (quoting *Aramony v. United Way of Am.*, 969 F. Supp. 226, 235 (S.D.N.Y. 1997)) (citing *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96-CIV-7590, 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997)); *accord, e.g., Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.*, 36 F. Supp. 2d 127, 131 (E.D.N.Y. 1998); *United States v. Gangi*, 1 F. Supp. 2d 256, 264 (S.D.N.Y. 1998).

Moreover, the Protective Order in this case[4] explicitly provides that inadvertent disclosure of privileged material does not constitute a waiver and established a procedure for notifying adversaries of claims in inadvertent disclosure and for resolving any disputes concerning such claims.

The Court is satisfied that the disclosure at issue here was inadvertent[5] and that BNYM acted appropriately and in accordance with the established procedures in asserting its position. There was no waiver by the production.

3. Customer Class Plaintiffs may well be correct in arguing that BNYM should not be permitted to rely defensively at trial or on summary judgment on the advice of counsel after earlier having invoked privilege to block discovery into the advice of counsel on the issue or issues in question.[6] If, and to the extent, BNYM invokes privilege during discovery, it runs the risk that

---

[4]

  DI 104.

[5]

  The fact that the document as originally produced was partially redacted superficially could be said to cut against the inadvertence finding, as the limited redaction demonstrates that someone initially paid attention to the privilege issue and made a decision as to what was and what was not privileged. Given the fact that this was one of 71,000 redacted documents produced and the realities of document review in cases like this one, which often involve hundreds of thousands or even millions of documents, one cannot be blinded to the fact that mistakes are made more often than is desirable. The Court chalks the production of the scantily redacted copy of this document up as a mistake, doubtless by a young lawyer or paralegal who perhaps was not sufficiently briefed or suffering from fatigue borne of too many hours in front of a computer monitor. In any case, there certainly is no basis for concluding that the unduly limited redaction was "completely reckless." *See CFTC v. Parnon Energy Inc.*, No. 11-CIV-3543, 2014 WL 2116147, at *4 (S.D.N.Y. May 14, 2014).

[6]

  *See, e.g.*, *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) ("It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted."); *United States v. Bilzerian*, 926 F.2d 1285, 1292-93 (2d Cir. 1991) (holding that the assertion of a good faith defense in a criminal trial may open the door to cross-examination as to otherwise privileged communications); *Chevron Corp. v. Donziger*, No. 11-CIV-0691, 2013 WL 6182744, at *2-3

it will be foreclosed later from using evidence to which the privileged communications are relevant. The parties should meet and confer with a view to working out, for consideration by the Court, a procedure to avoid such contingencies.  Inasmuch as BNYM now says that it is not asserting an advice of counsel defense, the Court is reasonably confident that agreement may be reached.

4.     The Court well understands that the extent and manner of the preparation of witnesses is an appropriate subject bearing on credibility and thus for cross-examination, subject always to reasonable regulation by the trial court.  The intrusion of this subject into a litigated motion with respect to deposition testimony, however, seems unnecessary and unreasonable. Perhaps more to the point, Federal Rule of Civil Procedure 26(b)(2)(C) empowers the Court to limit the frequency or extent of discovery where its burden or expense outweighs its likely benefit, considering all the circumstances.

These cases involve a great deal of money.  The Court has the assistance of able and distinguished counsel.  Nevertheless, some reasonable limits should be set, and this is one such instance.  The testimony that Customer Class Plaintiffs seek to compel from deposition witnesses will not be compelled, this of course without prejudice to consideration of the subject at trial, should a trial ever occur.

\* \* \*

---

(S.D.N.Y. Nov. 21, 2013); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470-72 (S.D.N.Y. 1996) (holding that the affirmative use of a report to demonstrate good faith waives the attorney-client privilege as to statements made to an attorney in preparation of the report).

Customer Class Plaintiffs' letter motion [DI 452] is denied in all respects. The Court notes, moreover, that its individual practices provide that discovery disputes are to be raised by a letter of up to four pages and contemplate only a single reply of the same length. Counsel on this motion have submitted at least nine letters, all single spaced and quite a few well in excess of the four-page limit. The Court encourages counsel to bear in mind that discovery is a means for the just, speedy, and inexpensive determination of lawsuits, not an end in itself.

SO ORDERED.

Dated:        September 22, 2014

_____
Lewis A. Kaplan
United States District Judge